

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable Coke R. Stevenson
Governor of Texas
Austin, Texas

Dear Governor:

Opinion No. O-5779
Re: Portion of armed forces now in
service of United States Govern-
ment entitled to vote in coming
Texas primary elections, and a
related question.

We are in receipt of your letter of December 29,
1943, in which you ask our advice in answer to the following
questions:

"1. What portion of the armed forces now in
the service of the United States government is
entitled to vote in our coming primary elections?

"2. In the event that any portion of such
forces is entitled to vote, then will you also ad-
vise me as to the procedure to be followed in order
to vote absentee?"

In answer to your first question we direct atten-
tion to Sections 1 and 2 of Article 6 of the Texas Constitu-
tion; as well as to Section 40 of Article 16 of the Constitu-
tion, and Articles 2954 and 7046 of the Revised Civil Statutes
of Texas.

Section 1 of Article 6 of the Constitution reads as
follows:

"The following classes of persons shall not be
allowed to vote in this State, towit:

"First: Persons under twenty-one years of age.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Second: Idiots and lunatics.

"Third: All paupers supported by any county.

"Fourth: All persons convicted of any felony, subject to such exceptions as the Legislature may make.

"Fifth: All soldiers, marines and seamen, employed in the service of the Army or Navy of the United States. Provided that this restriction shall not apply to officers of the National Guard of Texas, the National Guard Reserve, the Officers Reserve Corps of the United States, nor to enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, nor to retired officers of the United States Army, Navy and Marine Corps, and retired enlisted men of the United States Army, Navy and Marine Corps."

Section 2 of Article 6 of our Constitution prescribes the qualifications of voters in this State in the following language:

"Every person subject to none of the foregoing disqualifications, who shall have attained the age of twenty-one years and who shall be a citizen of the United States and who shall have resided in this State one year next preceding an election and the last six months within the district or county in which such person offers to vote, shall be deemed a qualified elector; provided that electors living in any unorganized county may vote at any election precinct in the county to which such county is attached for judicial purposes; and provided further, that any voter who is subject to pay a poll tax under the laws of the State of Texas shall have paid such tax before offering to vote at any election in this State and hold a receipt showing that said poll tax was paid before the first day of February next preceding such election. Or if said voter shall have lost or misplaced said tax receipt, he or she, as the case may be, shall be entitled to vote upon making affidavit before any officer authorized to administer oaths that such tax receipt has been lost. Such affidavit shall be made in writing and left with the judge of the election. The husband may pay the poll tax of

his wife and receive the receipt therefor. In
like manner the wife may pay the poll tax of her
husband and receive the receipt therefor. The
Legislature may authorize absentee voting. And
this provision of the Constitution shall be self-
enacting without the necessity of further legis-
lation."

Section 40 of Article 16 of our Constitution pro-
vides, in part, as follows:

"Provided that nothing in this Constitution
shall be construed to prohibit an officer or enlisted
man of the National Guard, and the National Guard Re-
serve, or an officer in the Officers Reserve Corps of
the United States, or an enlisted man in the Organized
Reserves of the United States; or retired officers of
the United States Army, Navy, and Marine Corps, and
retired warrant officers, and retired enlisted men of
the United States Army, Navy, and Marine Corps, from
holding in conjunction with such office any other of-
fice or position of honor, trust or profit, under this
State or the United States, or from voting at any
Election; General, Special or Primary in this State
when otherwise qualified." (Emphasis ours)

Article 2954, R. C. S., in the words of Section 1
of Article 6 of the Constitution, with the exception that
the fifth class of persons who by that statute shall not be
permitted to vote are listed as:

"All soldiers, marines and seamen employed
in the service of the army or navy of the United
States."

It will be seen that this provision of the statute
has been superseded by the provisions of Section 1 of Article
6 and Section 40 of Article 16 of the Constitution, so that·
the limitation of this statute need not here be considered.

Section 3 of Article 7 of the Constitution provides
that the poll tax of one dollar on every inhabitant of the
State between the ages of twenty-one and sixty years shall be

set apart annually for the benefit of the public schools.
Section 1 of Article 8 of the Constitution provides that
the Legislature may impose a poll tax. Pursuant to the pro-
visions of Articles 7 and 8 of the Constitution the Legisla-
ture has imposed a poll tax by the enactment of Article 7046,
R. C. S., which reads as follows:

"There shall be levied and collected from
every person between the ages of twenty-one and
sixty years, resident within this State on the
first day of January of each year (Indians not
taxed, and persons insane, blind, deaf or dumb,
or those who have lost one hand or foot, or are
permanently disabled, excepted), an annual poll
tax of one dollar and fifty cents, one dollar for
the benefit of the free schools, and fifty cents
for general revenue purposes. Said tax shall be
collected and accounted for by the tax collector
each year and appropriated as herein required. No
county shall levy more than twenty-five cents poll
tax for county purposes. The poll tax due from
citizens of unorganized counties shall be paid in
the county to which the unorganized county is at-
tached for judicial purposes."

Article 2959, V. A. C. S., provides that:

"A poll tax shall be collected from every
person between the ages of twenty-one (21) and
sixty (60) years who resided in this State on the
first day of January preceding its levy, Indians
not taxed, persons insane, blind, deaf or dumb,
those who have lost a hand or foot, those perma-
nently disabled, and all disabled veterans of foreign
wars, where such disability is forty (40%) per cent
or more, excepted. It shall be paid at any time
between the first day of October and the first day
of February following; and the person when he pays
it, shall be entitled to his poll tax receipt, even
if his other taxes are unpaid."

Article 5840, R. C. S., provides that certain of-
ficers and enlisted men of the active militia of this State
shall be entitled to an exemption from the payment of all
poll taxes except the poll tax prescribed by the Constitu-
tion for the support of the public schools, and Article 5841,
R. C. S., provides the method of taking advantage of such
exemption.

The foregoing constitutional and statutory provisions set out the qualifications of a voter in this State. It will be seen, then, that in order to vote in the coming primary elections of this State, the voter must meet the following conditions:

a. He must have attained the age of twenty-one years.

b. He must be a citizen of the United States.

c. He must have resided in this State one year next preceding the election and the last six months in the district or county in which he offers to vote.

d. He must have paid his poll tax, to which he became subject on January 1, 1943, and which must be paid before February 1, 1944.

e. He must be subject to none of the disqualifications set out in Section 1 of Article 6 of the Constitution.

Now, the disqualifications named in Section 1 of Article 6 of the Constitution, as pointed out above, include:

"All soldiers, marines and seamen, employed in the service of the Army or Navy of the United States. Provided that this restriction shall not apply to officers of the National Guard of Texas, the National Guard Reserve, the Officers Reserve Corps of the United States, nor to retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers and retired enlisted men of the United States Army, Navy and Marine Corps."

And Section 40 of Article 16 of the Constitution provides that "nothing in this Constitution shall be construed to prohibit" any of the officers or men excepted in the proviso of Section 1 of Article 6 "from voting at any Election; General, Special or Primary, in this State when otherwise qualified."

Each of the above-quoted portions of Articles 6 and 16 of our Constitution were added by amendment in 1932; at that time the Army of the United States was composed of the Regular Army, the National Guard while in the service of the United States, and the Organized Reserves including the

Officers' Reserve Corps and the Enlisted Reserve Corps,
U. S. C. A., Title 10, Ch. 1, Sec. 4.  The statute defining
the Army of the United States was amended in 1941 so as to
read:

"The Army of the United States shall consist
of the Regular Army, the National Guard of the United
States, the Officers' Reserve Corps, the Organized
Reserves, and the Enlisted Reserve Corps, and shall
include persons inducted into the land forces of the
United States under sections 301-318 of Appendix to
Title 50."  U. S. C. A., Title 10, Ch. 1, Sec. 2.

The Regular Army was then and is now defined as
follows:

"The Regular Army is the permanent military
establishment, which is maintained both in peace and
in war according to law."  U. S. C. A., Title 10,
Ch. 1, Sec. 3.

While we find no statutory definition of the
Regular Navy, by a parity of reasoning it consists of the
permanent naval establishment, which is maintained both in
peace and war according to law.  It is clear that neither
the "Regular Army" nor the "Regular Navy" comprehends the
various reserve forces who go to make up, either the Army
or the Navy of the United States.  It is equally clear that
neither such reserve forces nor persons inducted into the
land and naval forces under the provisions of the Selective
Service Act of 1940, when called to active duty, are members
of the Regular Army or of the Regular Navy.  Cramer v. Shep-
pard, 167 S. W. (2d) 147.

In the Cramer case the Supreme Court of this State
had before it the question of whether an officer appointed
under the provisions of Section 513, Title 10, U. S. C. A.
as amended, June 15, 1933, c. 87, Sec. 20, 48 Stat. 161; Sept.
9, 1940, c. 717, Title I, Sec. 101, 54 Stat. 875, could continue
to hold civil office in this State under the provisions of
Section 40 of Article 16 of our Constitution.  In holding that
he could continue to hold such civil office the Supreme Court,
speaking through Justice Sharp, after stating that the terms
used in the constitutional amendment must be understood as
defined by the then existing federal statutes, stated:

"At that time the 'Officers Reserve Corps', as expressed In Section 351, 10 U. S. C. A., included all officers assigned to 'sections corresponding to the various branches of the Regular Army, and of such additional sections as the President may direct . . .". and, as expressed in Section 513, 'in time of war any officer of the Regular Army may be appointed to higher temporary rank without vacating his permanent commission, such appointments in grades below that of brigadier general being made by the President alone, but all other appointments of officers in time of war shall be in the Officers' Reserve Corps.' (Italics ours) As stated above, Section 513 has been amended since Sections 33 and 40 were adopted. It is seen, therefore, that all officers in the Army of the United States appointed in time of war, except Regular Army Officers, were appointed in the Officers' Reserve Corps. When the words of the amendments were chosen, it was intended to include all classes named--that is, 'National Guard, the National Guard Reserve, and the Officers Reserve Corps of the United States . . .' as those terms were understood at that time. It clearly appears that the people, by adopting these amendments, intended to relieve the classes named therein from the inhibitions contained in the then existing Constitution, and as construed by the decisions of our court above cited. Any other holding would destroy the very object sought to be obtained by the adoption of the amendments.

"Judge Dixon was under 45 years of age on August 14, 1942. He is not in the Regular Army for the following reasons: (1) Regular Army commissions are in the permanent organization as defined in Section 3 above, and are for a definite period of time or for life. (2) Section 513 provides 'that an appointment, other than that of the Regular Army made in time of war, shall continue until six months after its termination.' He was not a member of the National Guard because he was not in any military organization before accepting the appointment as a Major in the Army of the United States. He was not inducted under the Selective Service and Training Act of 1940. He is a commissioned officer, and could not be a member of the Enlisted Reserve Corps.

". . .

"We think the people, by the adoption of the
amendments, intended to avoid the inhibitions con-
tained in the then existing Constitution with
respect to dual office holding. . . The people
no doubt considered, when they adopted these amend-
ments, that the public's welfare would be better
served by allowing these classes to serve the State
and the Nation in the military units named, while
at the same time rendering service to the State as
civil officers."

No case involving the right of reserve naval
officers, members of the Marine Corps, or persons inducted
into the land and naval forces under the provisions of the
Selective Service and Training Act of 1940, to hold civil
office or to vote has been decided by our courts. However,
in Attorney General's opinion No. 0-5039, this department has
ruled that the provisions of Section 40 of Article 16 exempt
all reserve officers commissioned in any branch of the land
and naval forces from the constitutional inhibition against
dual office holding, and that the same rule applies to per-
sons inducted into the land and naval forces under the pro-
visions of the Selective Training and Service Act of 1940.

This interpretation of the constitutional pro-
visions here under consideration is strongly supported by
the wording of those provisions. The exemption is extended
to "officers in the Officers Reserve Corps of the United
States." The terms, as used, are general and descriptive.
Had the framers of these constitutional amendments intended
to limit their effect to the Officers' Reserve Corps of the
Army of the United States or to the Organized Reserves of
the Army of the United States they could have done so in
plain words. They did not see fit to so limit the constitu-
tional provisions, and as written, the wording is broad enough
to include all of the various reserve officers corps belonging
to the United States and all of the organized reserves belong-
ing to the United States.

So construed, the terms "Officers' Reserve Corps
of the United States" and "Organized Reserves of the United
States" embrace all officers and all enlisted men, whether
enlisted by draft or otherwise, who are members of the land
and naval forces of the United States, except those officers
and men who are a part of the Regular Army or of the Regular
Navy, that is, members of the permanent military or naval
establishment of the United States.

You are, therefore, advised that it is the opinion of this department that all of the armed forces of the United States, except those who are members of the permanent military or naval establishment, that is, members of the Regular Army or the Regular Navy, who are otherwise qualified, are entitled to vote at the coming primary elections in this State. Any other construction of such provisions would convict the people of Texas of discrimination against all those men of this State who, in the performance of their patriotic duty, are giving their time and their lives to branches of the armed services other than the Army. This we are certain the people of Texas did not intend to do, and this, we are certain, the people of Texas have not done by the passage of the constitutional amendments under consideration.

In answer to your second question you are advised that the qualified voter who is in the armed forces, in order to vote absentee, must pursue the same course as any other voter. Absentee voting in this State is governed by Article 2956, V. A. C. S. That article reads, in part, as follows:

"Subdivision 1. Any qualified elector of this State who is absent from the county of his residence, or because of sickness or physical disability can not appear at the poll place in the election precinct of his residence, on the day of holding any general, special, or primary election, may, nevertheless, cause his vote to be cast at such an election in the precinct of his residence by compliance with one or other of the methods hereinafter provided for absentee voting.

"Subdivision 2. Such elector shall make application for an official ballot to the county clerk in writing signed by the elector, or by a witness at the direction of said elector in case of latter's inability to make such written application because of physical disability. Such application shall be accompanied by the poll tax receipt or exemption certificate of the elector, or, in lieu thereof, his affidavit in writing that same has been lost or mislaid. If the ground of application be sickness or physical disability by reason of which the elector cannot appear at the polling place on election day, a certificate of a duly licensed physician

certifying as to such sickness or disability shall accompany the application.

". . . .

"Subdivision 4. At any time not more than twenty (20) days, nor less than three (3) days prior to the date of such an election, such elector who makes written application for a ballot as provided for in Subdivision 2 hereof, shall be entitled to have his ballot cast at such an election on compliance with the following provisions:

"The application, including fifteen cents (15¢) to cover postage, shall be mailed to the County Clerk of the elector's residence whose duty it shall be forthwith to mail to such elector a blank official ballot and ballot envelope as provided in Subdivision 3, which ballot shall be marked by elector, or by witness at the direction of said elector in case of latter's inability to mark such ballot because of physical disability, in the presence of a Notary Public or other persons qualified under the law to take acknowledgments, and in the presence of no other person except said witness and/or such officer, and in such manner that such officer cannot know how the ballot is marked, and such ballot shall then in the presence of such officer be folded by the elector or by said witness in case of physical disability of said elector, deposited in said envelope, the envelope securely sealed, the endorsement filled out, signed and sworn to by the elector, or in case of physical disability, then by the said witness for and in behalf of said elector, and certified by such officer and then mailed by such officer, postage prepaid, to the County Clerk."

Subdivision 3 provides that any qualified voter, who expects to be absent from the county of his residence on election day, may vote absentee, in person, at any time not more than twenty days nor less than three days prior to the date of such election, and provides the manner of such absentee voting.

Other provisions of the statute have reference to the duties of the election officials as to the casting of absentee ballots and other incidents of absentee voting.

Honorable Coke R. Stevenson, page 11


With these we are not here concerned.

It should be pointed out that while an application for a ballot must be male in writing under the provisions of Subdivisions 2 and 4, there is no restriction as t the time of making such application, except that it must, of course, be made in time that the ballot may be received and returned so as to reach the clerk at least three lays prior to the election; there being no such restriction upon the mailing of the application as exists as to voting absentee in person, which can only be done during a period not more than twenty days and not less than three days prior to the election date.

However, despite the fact that the application may be earlier, the ballot may not be cast, and the clerk is not authorized to mail a ballot to an absentee voter sooner than twenty days prior to the late of the election, under the provisions of Subdivision 4.

In connection with the foregoing discussion of the qualifications of voters in this State it should be noted that Section 3 of Article 7 of the Constitution of this State imposes a poll tax of one dollar upon every inhabitant of this State between the ages of twenty-one and sixty years, for the benefit of the public free schools. It should be further noted that Section 1 of Article 8 of the Constitution authorizes the Legislature to impose a poll tax and that pursuant to that article the Legislature has provided for the levy of a poll tax, in the total amount of one dollar and fifty cents, one dollar of such tax being for the benefit of the public free schools and fifty cents thereof being for general revenue purposes. Art. 7046, R. C. S., Article 2956, V. A. C. S. provides that such poll tax shall be collected from every person with certain exceptions, who resided in this State on the first day of January preceding its levy, and that same shall be paid between the first day of October and the first day of February following its levy.

It will be seen that the poll taxes imposed by the foregoing constitutional and statutory provisions for the year 1943 are now due and payable if they have not already been paid. The Constitution provides that such taxes owing by the individuals subject thereto cannot now be released. Const., Sec. 55, Art. 3, as amended Nov. 8, 1932. Neither can the individuals subject to such taxes be permitted to

person, with certain exceptions, who resided in this State on the first day of January preceding its levy, and that same shall be paid between the first day of October and the first day of February following its levy.

It will be seen that the poll taxes imposed by the foregoing constitutional and statutory provisions for the year 1943 are now due and payable if they have not already been paid. The Constitution provides that such taxes owing by the individuals subject thereto cannot now be released. Const., Sec. 55, Art. 3, as amended Nov. 8, 1932. Neither can the individuals subject to such taxes be permitted to vote at the coming elections unless such individuals have paid such taxes and have a receipt evidencing such payment prior to February 1, 1944. See Const., Sec. 2 of Art. 6, supra.

Summarizing, you are advised,

First: that all members of the armed forces in the service of the United States Government, except members of the Regular Army and the Regular Navy, are entitled to vote in the coming primary elections of this State, provided that they are otherwise qualified to vote in such elections.

Second: Such voters may vote absentee in exactly the same manner as provided for absentee voting by other voters. That is, they may, (a) vote absentee, in person, at the office of the County Clerk of the county of their residence at any time not more than twenty days prior to election day and not less than three days prior thereto. (b) They may vote absentee by mail by making written application for a ballot in the statutory manner. Such application may be made at any time prior to the election, and upon such application ballot may be mailed to the voter by the county clerk at any time not more than twenty days prior to the date of election. The absentee ballot must be cast during a period not more than twenty days and not less than three days prior to election day.

Honorable Coke R. Stevenson, page 13


                    Trusting that the foregoing fully answers
your inquiry, we are

                              Very truly yours

                         ATTORNEY GENERAL OF TEXAS

                                   /s/

                    By        Ardell Williams
                                   Assistant

                                   /s/

                    By        Fowler Roberts
                                   Assistant

FR:AMM

APPROVED JAN. 10, 1944

/s/  GROVER SELLERS

ATTORNEY GENERAL OF TEXAS

THIS OPINION CONSIDERED AND

APPROVED IN LIMITED CONFERENCE